UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BARBARA WOODS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30094-MGM |
| COVIDIEN LP, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(Dkt. No. 26)

May 10, 2016

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Barbara Woods ("Plaintiff"), proceeding *pro se*, brought this action against Covidien LP

("Defendant") on May 26, 2015. (Dkt. No. 1.)  Plaintiff's original complaint alleged employment

discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

("ADEA").  Defendant filed a motion to dismiss on October 16, 2015 targeting Plaintiff's initial

complaint. (Dkt. No. 15.)  On November 6, 2015, Plaintiff's motion to amend complaint was

granted and, as a result, the court denied without prejudice Defendant's initial motion to dismiss as

moot. (Dkt. No. 22.)

Plaintiff filed her amended complaint on November 13, 2015. (Dkt. No. 25.)  Again,

Plaintiff alleged employment discrimination in violation of Title VII and the ADEA, but added a

claim that Defendant violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA") by

discriminating on the basis of sex.  Defendant promptly filed a motion to dismiss the amended

complaint on November 25, 2015. (Dkt. No. 26.)  For the reasons discussed below, Defendant's motion to dismiss Plaintiff's amended complaint will be granted.

## II.   BACKGROUND

The following facts come directly from Plaintiff's amended complaint and attached exhibits thereto, as well as two exhibits attached to Defendant's motion to dismiss—Plaintiff's charge of discrimination filed with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC") Dismissal and Notice of Rights letter sent to Plaintiff. *See Johnson v. Amherst Nursing Home, Inc.,* No. 14-cv-30100-MGM, 2015 WL 4750932, at *3 n.3 (D. Mass. Aug. 11, 2015) (court may consider at motion to dismiss stage MCAD and EEOC filings attached as exhibits to a party's motion to dismiss because they are official public records).[1]

On or about December 15, 2003, Plaintiff was hired by Defendant as a "packer" on a two-person printing press. (Dkt. No. 25, Am. Compl. ¶ 4.)  At some point thereafter, Defendant switched to one-person printing presses. (*Id.*)  Plaintiff alleges this resulted in much more work, and she requested a raise. (*Id.*)

At some point during her employment, "charts manager" Rick Methe "pushed dust down from the shrink line area of press 4 which fell into Plaintiff's hair and face while she was performing a 5 S safety and cleaning check." (*Id.* ¶ 6.)

On January 16, 2013, Plaintiff was working with a co-worker named Christopher Hart on a "shrink line" machine. (*Id.* ¶ 8.)  Mr. Hart complained to "lead man" Ken Roberts about Plaintiff. (*Id.*)  Plaintiff confronted Mr. Hart and asked "what the problem was?" (*Id.* ¶ 9.)  Mr. Hart responded by putting his hand in front of Plaintiff's face. (*Id.*)  Plaintiff claims to have felt threatened by Mr. Hart's actions. (*Id.*)

---

[1] In addition, Plaintiff originally attached her MCAD and EEOC charge to both her original complaint and her motion to amend. (Dkt. No. 1, Ex. C; Dkt. No. 19, Ex. B.)

The following day, on January 17, 2013, Plaintiff met with a human resources employee, Stephanie Douglas, and a supervisor, Angelo Detorrice, to discuss the incident with Mr. Hart. (*Id.* ¶ 10.)  Plaintiff explained what had happened and demonstrated the incident from the previous day. (*Id.*)  Thereafter, Ms. Douglas requested that Plaintiff hand over her badge and Mr. Detorrice escorted her out of the building. (*Id.* ¶ 11.)

Plaintiff filed a charge of discrimination with MCAD on January 18, 2013. (Dkt. No. 27, Ex. A.)  MCAD dismissed Plaintiff's charge for lack of probable cause on May 29, 2013. (Dkt. No. 1, Ex. C.) The EEOC adopted MCAD's findings on November 15, 2013. (Dkt. No. 27, Ex. B.)

Plaintiff makes two general accusations in the amended complaint.  First, Plaintiff alleges she has "personal knowledge" of male co-workers that were paid more for doing the same work as her. (Am. Compl., ¶ 5.)  Second, Plaintiff alleges that she performed duties of a higher grade and was never compensated. (*Id.* ¶ 7.)  Plaintiff attached a performance appraisal completed on November 7, 2012, stating that she "occasionally exceeds" or "meets expectations" in all categories, as well as a handwritten note from Mr. Roberts dated May 18, 2012 praising Plaintiff's hard work. (*Id.*, Exs. B, C.)

### III.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim of relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." *Id.* at 679.  Ultimately, determining whether a complaint states a plausible claim for relief will be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.*

Therefore, the plausibility inquiry necessitates a two-step analysis. First, the court must distinguish the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited). Second, the court must determine whether the factual allegations are sufficient to support "the reasonable inference that the defendant is liable for the misconduct alleged." *Garcia-Catalan v. U.S.,* 734 F.3d 100, 103 (1st Cir. 2013).

It is important to note that Plaintiff is a *pro se* litigant. On a motion to dismiss, the court must view a *pro se* plaintiff's allegations liberally and apply a less stringent standard to a *pro se* pleading than to a complaint drafted by counsel. *Rodi v. New Eng. Sch. Of Law,* 389 F.3d 5, 13 (1st Cir. 2004); *Muller v. Bedford VA Admin. Hosp.,* No. 11-cv-10510-DJC, 2013 WL 702766, at *3 (D. Mass. Feb. 25, 2013). Nonetheless, *pro se* plaintiffs must still comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the complaint fails to suggest an actionable claim. *Muller,* 2013 WL 702766, at *3; *Overton v. Torruella,* 183 F. Supp. 2d 295, 303 (D. Mass. 2001).

## IV.   DISCUSSION

Plaintiff is pursuing claims under Title VII, the ADEA, and the EPA. Defendant has moved to dismiss all such claims primarily on the grounds that the statute of limitations bars them. The court concludes all of Plaintiff's claims must be dismissed as untimely.

### A.   The Title VII and ADEA Claims

Title VII is a vehicle through which an individual may seek recovery for employment discrimination on the grounds of race, color, religion, gender, or national origin. *Franceschi v. U.S. Dept. of Veterans Affairs,* 514 F.3d 81, 85 (1st. Cir. 2008). In addition, Congress passed the ADEA to stop workplace discrimination specifically based on age. *Rossiter v. Potter,* 357 F.3d 26, 28 (1st Cir.

2004).  Both statutes require that an aggrieved employee file an administrative charge as a prerequisite to commencing a civil action for employment discrimination. *Fantini v. Salem State Coll.,* 557 F.3d 22, 26 (1st Cir. 2009); *Powers v. Grinnell Corp.,* 915 F.2d 34, 37-38 (1st Cir. 1990).  The administrative process begins with the filing of an administrative charge before the EEOC or its state analogue (in this case, the MCAD). *Morrison v. National R.R. Passenger Corp.,* No. 11-cv-11772-FDS, 2014 WL 1326550, at *1 (D. Mass. Mar. 31, 2014).  A charge of discrimination must be filed with the EEOC and/or MCAD within 300 days after the unlawful conduct has occurred. *See* 29 U.S.C. § 626(2)(d)(1)(A)-(B); 42 U.S.C. § 2000e5(f)(1); *Noviello v. City of Boston,* 398 F.3d 76, 85 (1st Cir. 2005); *Mukherjee v. Blake,* No. 12-cv-11381-FDS, 2013 WL 2299521, at *5 (D. Mass. May 24, 2013); *see also Cummings v. Pearson Educ., Inc.,* No. 03-cv-12183-DPW, 2004 WL 2830702 (D. Mass. Dec. 6, 2004).

Before a plaintiff brings suit in federal court, the EEOC must send the employee notice in the form of a right-to-sue letter. *Franceschi,* 514 F.3d at 85 (citing 42 U.S.C. § 2000e-5(f)(1)); 29 U.S.C. § 626(e).  Upon receiving such notice, the employee has 90 days to sue in federal court. *See Franceschi,* 514 F.3d at 85; 29 U.S.C. § 626(e).  With limited exceptions, such as claims of retaliation for filing an administrative charge, the failure to exhaust this administrative process "bars the courthouse door." *Franceschi,* 514 F.3d at 85 (citing *Bonilla v. Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 (1st Cir. 1999); *see Rodriguez v. Potter,* 419 F.Supp.2d 58, 64 (D.P.R. Feb. 15, 2006) ("[B]oth Title VII and the ADEA require administrative remedy exhaustion . . . .").

Plaintiff filed her charge of discrimination with MCAD against Defendant alleging discrimination because of race, color, and age on January 18, 2013. (Dkt. No. 27, Ex. A.)  On May 29, 2013, MCAD dismissed Plaintiff's charge for lack of probable cause. (Dkt. No. 1, Ex. C.) The EEOC adopted MCAD's findings and mailed a right-to-sue letter to Plaintiff on November 15, 2013. (Dkt. No. 27, Ex. B.)  This letter provided:

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

(*Id.*)

Plaintiff claims in her Opposition to Defendant's Motion to Dismiss to have "no recollection of receiving such an important document [the right-to-sue letter]."[2] (Dkt. No. 31.) Plaintiff asserts that she first learned from Defendant about the right-to-sue letter in October of 2015 and did not receive it in hand until October 30, 2015 after it was re-mailed on October 27, 2015. (*Id.*)

"There is a presumption that, in the absence of evidence to the contrary, a notice provided by a government agency is deemed to have been placed in the mail on the date shown on the notice and received within a reasonable time thereafter." *Loubriel v. Fondo del Seguro del Estado,* 694 F.3d 139, 143 (1st Cir. 2012).  "The phrase 'reasonable time' has some elasticity—but it also has limits." *Id.*[3]

---

[2] Plaintiff also attached an affidavit to her opposition stating: "I Barbara Woods do declare that I have no recollection of the right-to-sue notice mailed on or about Nov-13-2013 nor have I viewed it." (Dkt. No. 31, Ex. B.)

[3] As the First Circuit has explained:

> Courts have held that, in the context of first-class mailings, a reasonable time may encompass anything from three to five days.  *See, e.g., Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239 (3d Cir. 1999) (presuming that receipt is 3 days after mailing); *Banks v. Rockwell Int'l. N. Am. Aircraft Oper'ns.,* 855 F.2d 324, 326 (6th. Cir. 1988) (presuming that receipt occurs 5 days after mailing); *see also Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379-80 (5th Cir. 2002) (suggesting that courts have presumed receipt dates ranging from 3 to 7 days after mailing); *Abraham v. Woods Hole Oceanographic Inst.,* 553 F.3d 114, 121 n.10 (1st Cir. 2009) (assuming in dictum that receipt occurred 3 days after the issue date).

*Id.*

Plaintiff failed to present sufficient evidence showing the right-to-sue letter was not mailed to her on November 15, 2013 and received shortly thereafter (sometime between November 18, 2013 and November 27, 2013). Therefore, the presumption is that Plaintiff had 90 days from such date, equating to late February of 2014 or the beginning of March of 2014, to file a federal lawsuit. Plaintiff filed her complaint on May 26, 2015, which is approximately 15 months after her 90-day window to sue would have expired from the right-to-sue letter received in mid-to-late November 2013. Plaintiff has provided no evidence that she did not receive the right-to-sue letter in November of 2013 but, rather, explains that she cannot *recall* receiving the letter at that time. *See Sherlock v. Montefiore,* 84 F.3d 522, 526 (2d. Cir. 1996) (explaining that the *pro se* plaintiff's affidavit stating that she had no recollection of when she received right-to-sue letter was insufficient to rebut presumption that she received it within three days of when it was mailed). *But see Ciprian v. City of Providence,* No. 12-cv-651-ML, 2013 WL 1339264, at *4 (D.R.I. April 1, 2013) (allegation *in complaint* that the plaintiff did not receive right-to-sue letter shortly after it was mailed entitled to presumption of truth at the motion to dismiss stage).

In *Sherlock,* the *pro se* plaintiff filed her action 99 days after the date on the right-to-sue letter. *Id.* at 525. The United States District Court for the Southern District of New York granted the defendant's motion to dismiss, holding the plaintiff's Title VII and ADEA claims were untimely, stating, in pertinent part, as follows:

> Sherlock filed this claim ninety-six days after receiving her right-to-sue letter, thus exceeding the ninety-day statute of limitations by six days. The EEOC mailed notice to Sherlock on February 15, 1995. A presumption exists that an EEOC notice is received three days after its mailing. *Baldwin County Welcome Center,* 466 U.S. at 148 n. 1 [104 S.Ct. at 1724 n. 1]. Accordingly, Sherlock is presumed to have received her right-to-sue letter on February 18, 1995. Because Sherlock commenced this action on May 25, 1995—ninety-six days later—her Title VII and ADEA causes of action must be dismissed as untimely.

*Id.* However, the Second Circuit reversed and vacated the dismissal of the plaintiff's claims under Title VII and the ADEA finding evidence existed that created an issue of fact as to whether the

7

complaint was timely.[4] *Id.* at 526.  The defendant presented evidence that it did not receive the letter

until at least 12 days after its stamped letter date.[5] *Id.* The plaintiff, as in the case at hand, submitted

an affidavit stating "she had no recollection of when she received the letter." *Id.*  Ultimately, it was

the evidence that the defendant did not receive the letter until 12 days after the stamp date which

created an issue of fact, not the plaintiff's affidavit. *Id.*  The court stated, "[w]e also note that, leaving

aside the [defendant's] copy of the letter, the evidence that the [plaintiff] proffered to the district

court in the present case was not sufficient to rebut the presumption." *Id.*  Therefore, as in *Sherlock*,

Plaintiff cannot rely solely on her affidavit to overcome the presumption absent additional

evidence.[6]

The court also notes that Defendant raised this untimeliness argument in its initial motion to

dismiss. (Dkt. No. 16.)  Plaintiff therefore was on notice of the issue when she filed her amended

complaint.  However, Plaintiff did not allege in her amended complaint anything about not receiving

the right-to-sue letter until it was mailed a second time on October 27, 2015. *Compare Ciprian,* 2013

WL 1339264, at *4.  As explained, simply asserting in an opposition to a motion to dismiss that

Plaintiff "has no recollection" of receiving the right-to-sue letter does not suffice. *See Sherlock,* 84

F.3d at 526.  Moreover, as Defendant argues, Plaintiff does not meet the difficult standard for

invoking the equitable tolling exception.[7] *See Muller*, 2013 WL 702766, at *3-4.

---

[4] The court rationalized that the *Baldwin* 3-day presumption is not "irrebuttable." *Sherlock,* 84 F.3d at 526. Specifically, "[i]f a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive." *Id.* (citing *Smith v. Local Union 28 Sheet Metal Workers,* 877 F. Supp. 165, 172 (S.D.N.Y. 1995)).
[5] "The fact that the [defendant], as one of two addressees, received the letter at least 12 days after its typewritten date plainly raises a question of fact as to whether the [plaintiff], the other addressee, received it within three days of its typewritten date." *Id.* at 526.
[6] An additional marked difference between Plaintiff and *Sherlock* is the timing of the causes of action.  The *Sherlock* plaintiff filed less than a week past her deadline, which would make it reasonable that there existed an issue of fact regarding timeliness.  In the instant case, however, Plaintiff filed over a year after the reasonable time period she would have received the right-to-sue letter.
[7] Equitable tolling is available in exceptional circumstances to extend the statute of limitations in cases brought pursuant to Title VII and the ADEA. *Muller,* 2013 WL 702766, at *3; *Bush v. Quebecor Printing (USA)*

B.      **The EPA Claim**

The EPA prohibits an employer from discriminating on the basis of sex by:

> paying wages to employees in such establishment at a rate less than the rate at which
> [s]he pays wages to employees of the opposite sex in such establishment for equal
> work on jobs the performance of which are performed under similar working
> conditions, except where such payment is made pursuant to (i) a seniority system; (ii)
> a merit system; (iii) a system which measures earnings by quantity or quality of
> production; or (iv) a differential based on any other factor other than sex.

*Ingram v. Brink's, Inc.,* 414 F.3d 222, 232 (1st Cir. 2005) (quoting 29 U.S.C. § 206(d)(1)).  A cause of

action under the EPA "may be commenced within two years after the cause of action accrued, and

every such action shall be forever barred unless commenced within two years after the cause of

action accrued, except that a cause of action arising out of a willful violation may be commenced

within three years after the cause of action accrued." *Lassiter v. Massachusetts Bay Transp. Authority,* No.

01-cv-11699-PBS, 2002 WL 1858761, at *2 (D. Mass. July 30, 2002) (quoting 29 U.S.C. § 255(a)).

However, the EPA, unlike Title VII, does not require exhaustion of administrative remedies.

*Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1527 (11th Cir. 1992) (citing *County of*

*Washington v. Gunther,* 452 U.S. 161, 175 n. 14 (1981)).

Plaintiff's cause of action arose on January 17, 2013, or at the latest, sometime thereafter

when she received her last paycheck.[8]  Absent willfulness, Plaintiff likely had until late January of

2015 to file a lawsuit involving her EPA claim.  Plaintiff filed her original complaint on May 26,

---

*Corp.,* 130 F. Supp. 2d 301, 305-06 (D. Mass. 2001).  A party asserting equitable tolling must demonstrate that:
(1) she has been diligent in pursuing her rights and (2) extraordinary circumstances prevented her from filing
on time. *Muller,* 2013 WL 702766, at *4 (citing *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)); *see Bonilla v.*
*Muebles J.J. Alvarez, Inc.,* 194 F.3d 275, 278 (1st Cir. 1999) (noting that "[g]enerally speaking—peculiar
circumstances may leave some wiggle room—equitable tolling is not appropriate unless a claimant misses a
filing deadline because of circumstances effectively beyond her control").

[8] As the First Circuit has emphasized, a "decision to hire an individual at a discriminatorily low salary can,
upon payment of each subsequent paycheck, continue to violate the employee's rights." *LeGoff v. Trustees of*
*Boston University,* 23 F. Supp. 2d 120, 126 (D. Mass. 1998) (quoting *Lamphere v. Brown Univ.,* 685 F. 2d 743, 747
(1st. Cir. 1982)); *see id.* (finding plaintiff's EPA claim period began when she received her last pay check from
employer).  Defendant terminated Plaintiff's employment on January 17, 2013, and it is reasonable to infer
that Plaintiff received her last paycheck within a week or two of this date.

2015, and she added her EPA claim after filing her amended complaint on November 13, 2015.  If Defendant was shown to have willfully violated the EPA, Plaintiff would have had until at least January 18, 2016 to assert this claim.

A plaintiff's EPA claim for a willful violation can be based on a reasonable inference from the facts in the complaint. *See Lassiter,* 2002 WL 1858761, at *2-3; *see also Cheng v. IDE Associates, Inc.,* No. 96-cv-11718-PBS, 2000 WL 1029219, at *7 (D. Mass. July 6, 2000) (inferring a willful violation of the EPA by defendants in a *pro se* litigant's complaint when she alleged the defendants ignored her complaints of being underpaid and such defendants knew she was employed in a group of male counterparts who had the same level of skill performing the same type of work, but were compensated more than the plaintiff).  The word "willful" is widely used in the law and is generally understood to refer to conduct that is not merely negligent. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).  The Supreme Court, when specifically addressing the term "willfulness" under the Fair Labor Standards Act, explained "the standard of willfulness that was adopted in [*Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128 (1985)]—that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute—is surely a fair reading of the plain language of the Act." *Id.*

Plaintiff's EPA claim is barred as untimely unless it can be shown that Defendant acted willfully.  The only possible consideration of willfulness that can be formed presently is determined by two isolated incidents.  First, Plaintiff alleges another male employee pushed dust into her hair.  Second, Plaintiff alleges her altercation with a second male employee led to her termination.  Based on the amended complaint, there are not sufficient facts that would suggest a willful violation of the EPA by Defendant.[9]  Therefore, Plaintiff's EPA claim is also untimely.

---

[9] For example, unlike in *Cheng*, Plaintiff has not alleged that she complained to her employer of the alleged underpayment.

Plaintiff's EPA claim is also subject dismissal on an alternative ground. To prevail on a claim under the EPA, the plaintiff must show that "the employer paid different wages to specific employees of different sexes for jobs performed under similar working conditions and requiring equal skill, effort, and responsibility." *Ingram,* 414 F.3d at 232. Plaintiff lists the names of three male employees in the amended complaint, but she does not allege any facts showing that they were paid different wages. *See Pabon-Ramirez v. MMM Health Care,* No. 12-cv-1743-JAF, 2013 WL 1797041, at *8 (D.P.R. April 29, 2013) (dismissing the plaintiff's EPA claim when the complaint did not mention any allegations relating to unequal wages between employees of the opposite sex). Likewise, Plaintiff does not show these three male employees performed under similar conditions that required equal skill, effort, and responsibility. Rather, her complaint simply alleges that "Plaintiff has personal knowledge of male coworkers who were paid more for doing the same work." (Am. Compl. ¶ 5.) This is just the type of conclusory allegation which is insufficient to avoid dismissal. *See Iqbal*, 556 U.S. at 678 ("A pleading that offer 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.' (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007))); *see also Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'" (quoting *Twombly*, 550 U.S. at 557 n.5)). Indeed, other courts have dismissed similar EPA claims based on the plaintiff's failure to identify specifically named comparable employees who received higher wages for similar work. *See Hughes v. Xerox Corp.*, 37 F. Supp. 3d 629, 644 (W.D.N.Y. 2014) ("Plaintiff does not identify the alleged 'similarly-situated males' by position or name, nor does she offer any supporting facts for the allegation that she was paid less than her male counterparts."); *Edwards v. Bertucci's Italian Restaurant*, 2013 WL 2096244, at *4 n.3 (D. Mass. May 13, 2013) ("Here, the amended complaint fails to set

forth any allegations that Bertucci's paid different wages to certain female employees for similar jobs with similar skills to that of plaintiff."). Accordingly, as Defendant argues, Plaintiff's amended complaint fails to adequately allege an EPA claim.

## V.   CONCLUSION

In light of the foregoing, the court ALLOWS Defendant's motion to dismiss Plaintiff's amended complaint. (Dkt. No. 26.)  The clerk shall enter judgement for Defendant, and this case may now be closed.

It is So Ordered.

/s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge